Morning. Welcome to the Ninth Circuit. We will hear the cases in the order in which they are listed on the calendar. We have several cases submitted on the briefs, and so the first case for argument is Wigton v. State Farm Fire & Casualty Co. Mr. Rossmiller? Yes. I'm afraid I'm not going to read all of these things. I'm David Rossmiller, representing State Farm. This is my partner, Sean Carney, who is here as well. So first I guess I would ask if you want to ask me a question before I begin, if you have something that you want to ask about. I'm sure we'll have some, but why don't you go ahead. I think there's numerous reasons why the district court's ruling should be reversed, but the easiest analysis for you is to look at the business pursuits exclusions in the homeowner's policy and the personal liability umbrella policy, which is called shorthand to PLOP. So what the case is about, you know, is that Ms. Wigton was brought suit in the federal court against David Murphy, State Farm's insured for sexual harassment, assault, and that's a very key thing here that it was later. There's two complaints because it was later reintroduced in state court in Montana because the covenant judgment that Ms. Wigton and the defendant David Murphy were going to enter into, Judge Malloy said that that made it, that there was no jurisdiction at that point because the settlement had already been entered into prior, so he did not enter the judgment in federal court. Counsel, I guess let me ask you this as an initial point. Yes. Why, although neither party really addressed this, it's a question that certainly I had. I've noticed that neither asked to certify the question of whether or not an occurrence, under this policy, constitutes an unintentional conduct under Montana law. So I don't know whether we should be deciding that. What's your position as to whether or not this matter really should go back to Montana on a certified question? Let me explain that, Judge Mendoza. That's a very good question. Thank you. It's not necessary to certify it to the Montana Supreme Court because they've ruled on this numerous times, including in the Fisher Builders case and others. Well, they set out the test, but not specifically on this particular point, have they? You mean whether a sexual assault? Correct. Well, one thing we could look at is a Ninth Circuit case, which is based on Montana law. That is the Lockard case, which was mentioned in our briefing. And there's case citations in there. Shawn, what is the case that's traditionally cited on that? Strecker? Are you talking about Strecker? Yes. Sorry, I mispronounced it. Strecker was an indemnification case. I'm not sure if that makes a difference or not. I'd appreciate your comment on that. And then also, in response to Judge Mendoza, you said, well, it's the correct standard, but that doesn't get you to the end of the line in terms of how it applies here. So it seems that this is a central question. Yes. Well, let me see if I can address it to you. So there are numerous cases from the, you know, in Montana, there is no intermediate court of appeals, so it goes directly from the circuit courts to the Supreme Court. So the Supreme Court has many cases on these things. And there are any number of things that the Montana Supreme Court has said are per se, not occurrences, punching someone in the face, sexual molestation under many circumstances, and other things that would be so objectively considered to be causing harm that they could not be an occurrence. Right. And I see what you're saying. You're saying that under the test that's been enumerated by the court, the Fisher Builder test, under that analysis, you're saying that this would not. But there's never been a case, has there, from Montana, indicating whether or not the sexual assault, specifically that's alleged to have occurred in this case, whether that would trigger that occurrence under this policy? You mean under this particular language or just under a liability policy? Under this language. Well, an accident. I mean, there are cases that we have cited that deal with, I mean, that is the key to the Fisher Builder's test, it's always an objective test. I'm sorry, just a yes or no question, really. Is there a case on point from Montana interpreting that particular issue? Let me ask my partner if I'm, not that I know of, the exact thing that you're talking about, Judge Mendoza. Maybe you can tell us in rebuttal if there is one that you know of. But you don't, we don't necessarily need to resolve the occurrence question if it's within one of the exclusions. Yes, that is correct. That's why I started off with the business pursuits exclusion, because you don't need to get to the occurrence. But that's a very good question. Thank you for asking that. Sorry I kind of dragged it out. Maybe you could address the exclusions that you think. Yes. So there are a number of exclusions that apply. But the business pursuits exclusion is in both policies, the homeowner's policy and the PLUP. Do you mind if I call it the PLUP, the Personal Liability Umbrella Policy? That's the, not an excess policy, but it's the one that is, there's many people who have homeowner's policies also have these liability umbrella policies. So they're, for our purposes here, they're identical, the exclusion in the homeowner's policy and the PLUP. And they deal with whether it's arising out of the course of your business or profession. And here, it's very clear in the complaint and also from the extrinsic evidence. Now, I mean, you all who've been judges in Washington, you know that Montana has different rules on examination of extrinsic evidence, which you can, insurers, it's very similar to California law, that insurers can look at, certainly have to look at the complaint, but can look at extrinsic evidence against coverage, starting from the very beginning. And if an insurer provides you with extrinsic evidence in favor of coverage, you must examine that as an insurer under Montana law. But let's just talk for a moment about the complaint itself. And if you look, two key things are Paragraph 8 and Paragraph, yes, 40. I wanted to make sure I said it. So Paragraph 8 of the complaint, and all things in the complaint are consistent with this. Paragraph 8 says, at all times relevant, Murphy was employed by she and I, acting. And that's the right pronunciation of it, isn't it? Yeah. It's not she and I, it's she and I. At all times relevant, Murphy was employed by she and I, and acting in the course and scope of his employment. So is business pursuits defined in the policy? Business is. Not a pursuit, per se, but business is. And what's the policy definition of business? Let's see. It is, sorry. I guess just to move this along, the next question is going to be, just because somebody is acting, somebody who's doing his job, you wouldn't, it's not the, just as a matter of ordinary language, you wouldn't necessarily say that was a business pursuit. I mean, like the clerk at the store, is he engaged in a business pursuit? I mean, he's just doing his job. So why do you think it comes within that phrase? The business is, this is, it's ER 181 is where you can find that definition. It's business means a trade, profession, or occupation. This includes farming. Is it your view that any, any, I mean, would any tort committed by a person who is acting within the scope of his employment be covered by the business pursuits exception, because he's doing his job, so that's engaged in a profession? Yes, as long as it's related to the occupation, to the business. This isn't, I don't know of any business where sexual assault is part of the business pursuit. That's a very good question. Yeah, so explain to me how this is in the scope, or even within the ambit of a business pursuit. People commit misconduct all the time within the scope of their employment. For instance, an executive at a bank, it is not within the scope of his employment to be extorting or stealing money, but that is a business pursuit. It is involved in the business pursuit. Well, that is directly involved with the nature of the business. Yes. This is not directly, or even indirectly, involved with the nature of the business. I mean, what's the business? Apartment rental? Yes, I think that's an excellent question, and I'm glad you asked it. It is within the scope of the business, as was quite obvious in the complaint when it was filed in the federal court, was against she and I and Mr. Murphy. And all that was, she and I was alleged to have been negligent oversight of him throughout, and they couldn't possibly have been liable for it unless he was acting within the course and scope of his business. Yes, but just because you have a complaint doesn't mean that that's the answer. I mean, that means that's an allegation, but it needs to be proven. Montana courts take a very expansive view of the business pursuits exclusion, and they have stated in the cases that we cited there that the acting in the, for example, acting within the realm of being employed, and here, I mean, Mr. Murphy was using his position as the property manager to prey on Ms. Wigdon, and that was how he got to have the influence and the knowledge, and without that, he's just a man out on the street. But that's how he gained access and control and tried to exercise more improper control. So that is, it's not just related, but it is directly arising out of it. And that is actually alleged in the complaint. Paragraph 40 states that, I'm sorry, am I too loud? Murphy's capacity as property manager enabled him to contract with plaintiff, that is, bring her into the apartment complex. You're getting down to just about a minute and a half. I don't know if you want to reserve some time. I did want to reserve just, oh, yes. Okay. Yes. I wanted to say five minutes. I should have told you that off the top of, but anyway, it does say his capacity as property manager enabled him to enter into her residence unlawfully, to harass, to threaten, and ultimately to assault plaintiff. That is what is alleged. All right. Thank you. All right. Okay. Sorry, I didn't realize it was going that quickly. She told me to look at the lights, and I wasn't doing that. I'm sorry. All right. Is it motory? Motory. All right.  May it please the court. I represent Ms. Wignan in this DEC action and this duty to defend case. In this case, District Court Judge Donald Malloy got it right. He, through his 19-page opinion, thoroughly analyzed the duty to defend and correctly concluded that there was at least a chance of coverage under both policies here. State Farm failed to follow the procedure set out by the Supreme Court when they contest coverage. That is, defend under reservation of rights and file a DEC action. And in this case, it actually was not filed. The DEC action actually was not filed. They risked not only the interests of the insurance company by failing to follow this procedure set out, but the interests of their insured. Judge Malloy held State Farm accountable for taking this risk. State Farm's response can really be categorized into two parts. One is the allegations in the complaint did not trigger a duty to defend. And two, the denial letter that State Farm sent to its insured was misrepresented or misinterpreted or over-relied upon by Judge Malloy. Both positions are contrary to Montana law. As far as the exclusions Mr. Rossmiller is discussing, they raised intentional conduct exclusion, punitive damages exclusion. They have argued in general that the conduct was intentional. There's allegations of intentional conduct, and therefore, there's no duty to defend. Well, that's not the law in Montana. There are several cases by the Montana Supreme Court where intentional conduct was alleged and there still was a duty to defend. Here's always the conundrum in these duty to defend cases. Of course, the prudent course is to file the declaratory judgment action, and then you know one way or the other. But it can't be that hypothetically, if you turn out to be correct in your interpretation of the policy, that you therefore mandatorily needed to invoke a duty to defend. Because otherwise, if there's any question, it would kind of render meaningless policy exclusions. So here, just hypothetically, if it were determined that the exclusions on the business and on accident or occurrence were appropriate, why then would they have had an absolute duty to defend? The determination of whether they're appropriate should be done with court guidance, especially in a case like this where there have been no established facts. All we have are allegations. And Montana law is clear. When there are allegations of intentional conduct, that does not excuse an insurance company from their duty to defend. We see that in several cases, Newman, Huckins, Liss. It's a curious position for you to be in, making that argument, because sure, they're just allegations, but they're your clients' allegations, right? So, I mean, you're sort of asking us to say, well, sure, this is what I alleged, but maybe I was wrong. I mean, isn't that what we would have to say? No, Your Honor. The Newman case addressed just this issue. In Newman, there was a blanket allegation that the defendants jointly breached their obligation, their professional obligations, to the student in a boarding school. There was a professional services exclusion. It could have just stopped there, but up at the Montana Supreme Court, Justice Cotter held that even with that blanket allegation, you still have a duty to look at the underlying facts to see if, in fact, there are some acts that would fall in unprofessional category. So the analysis does not stop just because there is an allegation that Murphy acted in the course and scope of his employment. The court in Newman made clear that you have to go beyond that. These are just allegations. Well, what about, I mean, so maybe you can address it. I think both policies have an exclusion for willful and malicious acts, right? So, you know, based on the complaint and whatever other facts might be out there, explain the scenario in which this might have been something other than a willful and malicious act. The complaint specifically includes facts that would take it out of the malicious and willful category. For instance, in the complaint itself, it pointed out that Murphy has never admitted to any wrongdoing. He pled no contest to negligent endangerment. There's never been a finding of willful or malicious behavior. All of the cases that State Farm— Wait, counsel, but what negligent behavior is there that is alleged? I guess I didn't—that's a part of the complaint. I was trying to understand. It appears that it's all intentional acts. I respectfully disagree. There are facts in there that can be considered negligent. For instance, if we accept Murphy's account that they had a consensual relationship, he only pled guilty or no contest to negligence, and if we accept that, there could feasibly be a negligence case. Is it negligent for a property manager to have a consensual relationship with a tenant that results in harm to her? We don't know. It's too early at this juncture to make that sweeping factual conclusion. How would a consensual relationship with a tenant play or interplay with the business exclusion? Well, there are facts—well, first of all, there are facts that question whether everything was in the course and scope of the employment. For instance, some of the interactions happened off the workplace, outside the work hours, and there's a question as to whether or not bringing someone out to clean a private cabin is related to the business pursuit of managing the apartments. Well, then why did you say that at all times he was acting within the course? I mean, you're asking us to disregard your own allegations, and I'm still struggling to see how it's appropriate for us to do that. There were two different insurance companies involved here. There was the employer's commercial general liability carrier, and then there was Murphy's homeowners. We didn't even find out about Murphy's homeowners policy well into the case. Through discovery, I requested Murphy to produce a copy of all insurance policies that could be applicable. At that time, the insurance company produced to Murphy's counsel a copy of these policies. I studied them and saw clearly there's at least a potential for coverage here, irrespective of this allegation under Newman, and I requested Murphy to tend to this claim to his homeowners. He did so. State Farm denied defense right there. There weren't any proposed findings out there floating around that could be looked at. They denied defense based on just the allegations in the complaint. The commercial liability carrier for the employer did it right. They provided a defense to Murphy and then filed a DEC action. There was a DEC action by Pioneer Specialty, that's commercial carrier, throughout this entire case. It is not unreasonable to frame a complaint keeping in mind all possible coverage. I mean, it would be malpractice not to do that. But in Newman, it doesn't matter. If this blanket allegation is included, the court still has a duty to look at the other facts alleged to see if, in fact, that allegation is dispositive. Let me ask you about the sexual assault being an occurrence or an accident. So, counsel cited the Fisher Builders case. And there, as I read it, Judge Malloy undertook a subjective analysis. Do you agree that it should be an objective analysis? There are two parts to the Fisher test. The first question is, is there an intentional act? That is subjective. And that's the Cameron case. The Cameron case said the first part of the Fisher test is subjective. You have to look at whether or not Murphy considers it an intentional act or if there has been an established fact finding. Has there been a guilty plea to an intentional act? Has there been a verdict? The second question, if you reach that and say, for sure, there was an intentional conduct here, there's no dispute, the facts have been established, then you go to the second question, and that is objective. Was the harm from that intentional act objectively, reasonably to be expected? And that subjective analysis is clearly relevant under the Fisher test. And so which prong of the test do you think it fails? The first one? The first one, absolutely. But what – maybe I'm misunderstanding your definition of what the act is. I mean, like, the sexual relationship, whether consensual or not, was intentional, right? I mean, there's no suggestion that that happened accidentally. So how is not at least the first prong of this test necessarily satisfied? At a duty-to-defend analysis, we can't make factual conclusions that result in no coverage. And that's exactly what you're encouraging the court to do. We don't know. If someone is having a consensual relationship, we don't know what his intent is. Absolutely not. Now, there has to be some fact-finding in order to establish that first element. And the evidence in the complaint shows that Murphy had no intentional act involved that could – I'm just having a little trouble getting my head wrapped around that as a practical matter. Maybe you can explain a little further. Yeah. In Montana, negligence is the failure to use reasonable care that results in harm. Did Murphy intend to fail to use reasonable care in this relationship? He says no. That couldn't be negligence. We don't know. But I think what's important to realize is State Farm wants to make the entire case about sexual assault. It is not. There are allegations of wrongdoing that fall outside those incidents. He entered her apartment on many occasions where there was no sexual interaction. That falls under the umbrella policy. State Farm acknowledges that losses have been established as a matter of law under the policy, and you only have to look to the exclusions under the umbrella policy then. And they raise exclusions for business pursuits. But under Newman, just an allegation, a blanket allegation in a complaint does not end the inquiry. You have to look at the rest of the allegations in the complaint to see if, in fact, all of his conduct was in the course and scope of the employment. And there's questions based on the allegations in the complaint. I'm happy to talk about the Reservation of Rights letter, too, in my last few minutes, unless the Court has other questions. State Farm finds fault with Judge Malloy limiting the policy defenses to those adequately explained to Mr. Murphy in the Reservation of Rights letter. State Farm wants to find new bases, new policy defenses that were not explained to Murphy and rely upon them. Judge Malloy refused to do so, relying on Newman. Newman, in 2013, changed the law. Before Newman, an insurance company did not have to explain every single basis for abandoning their insured. After Newman, they are required to do so. And Malloy, applying Newman, limited State Farm to the policy defenses that were adequately raised. And the policy behind that is this is the insured's only opportunity to understand why their insurance company is abandoning him. This is the only way that they can contest that conclusion or abandonment. And if they are not explained why they're being abandoned, how can they adequately represent their interest in this situation? Malloy applied Newman appropriately. He limited them to what they had raised adequately in the Reservation of Rights letter. And Judge Malloy correctly found that, first, there have been no established facts. In every single case that State Farm cites, Strecker, Smith, Willoughby, Lockard, there were no disputes as far as an intentional conduct. There's always a guilty plea or a verdict, so there was no question. In Lockard, specifically, which he encourages this Court to look at, that was a duty to indemnify case. And Lockard pled guilty to criminal sexual conduct and went to prison. There was no question. In this case, all we have is a no-contest plea to negligent endangerment. And there are allegations in the complaint outside just the sexual assault that trigger the duty to defend. And State Farm is limited to those policy defenses raised. They are attempting to come up with new facts. For instance, they are attempt—I guess I'm done.  Thank you, Counsel. Use the glasses. I know they're not the best-looking ones. So there's some things to address there. But in answer to your question, Judge Mendoza, one of the cases that we cited in our reply brief, RS— Excuse me for just a moment.  All right. RS v. United Services, 408 Montana 195, does address mostly what you were asking about occurrences. It's not exactly the same as this case, but that does address. And that's a recent case. I believe it's 2020. Okay. Thank you. So let me just clarify a few things that were said there. State Farm is not using any defenses that weren't in the denial letter. You can look at that and see. All the things that we've raised here, business pursuits, willful and malicious, the exclusion for sexual harassment and discrimination in the PLUP, they're all mentioned in there. Well, you know, I think counsel's point was that because there's some dispute over whether there was consensual activity or not, that nothing's ever been adjudicated in terms of being intentional. What is your response to that? That is a good question. There is no requirement whatsoever. Good question, but what's the answer? The Supreme Court has said numerous times, you don't have to do any investigation. If the complaint doesn't trigger coverage or is excluded, there's no duty to defend. And the Lockhart case is an excellent one that says simply because he thought that it was not objectively, that he didn't intend to harm her by saying these lies about her, much as Murphy did about Wigton, about whether this was consensual. The court said, quoting Fisher Builders, courts are well-equipped to decide what is objective and reasonably should be expected to come from. When you're lying about somebody, saying that they, like there's notes that he put up saying that she was doing this stuff with him through consent, that is reasonably expected that that would harm her. Thank you, counsel. Right. There's one thing, though. Could I just mention? You're over your time. I went too far the first time.  No, I think we have your argument. Okay. Thank you. Well, you're the judge. I would thank both sides for their arguments this morning and the cases submitted.
judges: McKEOWN, MILLER, UNKNOWN